30

In the Matter of Ralph and Charles Abrams, a Partnership, Petitioner, v Roderick G. W. Chu et al., Constituting the State Tax Commission of the State of New York, Respondents.

Third Department, January 29, 1987

### APPEARANCES OF COUNSEL

*Goldschmidt, Oshatz & Saft (Edward Sussman* and *William J. Adelson* of counsel), for petitioner.

*Robert Abrams, Attorney-General (Julie S. Mereson* and *Nancy A. Spiegel* of counsel), for respondents.

### OPINION OF THE COURT

MAHONEY, P. J.

Petitioner is a general partnership which was formed by Ralph and Charles Abrams.[1] Petitioner is in the business of real estate investment which includes the purchase and sale of both commercial and residential properties as well as the renting of such units. Although petitioner wholly owned some properties, which are not the subject of this proceeding, it was also a co-owner of other properties as a member of joint ventures, corporations and other partnerships.

The circumstances surrounding petitioner's involvement in two pieces of property are at issue in the present proceeding. First, petitioner is a stockholder with a 40% ownership interest in Turtle Bay Theatre Corporation (hereinafter Turtle

---

1. Although both Charles and Ralph Abrams have died, their estates have continued to operate the partnership in their names.

Bay) while Donald Rugoff owns the remainder of the stock. In 1961, Turtle Bay acquired a long-term ground lease on property located at 1001-1007 Third Avenue in New York City and built a theatre on that property. On February 8, 1961, Turtle Bay entered into an agreement with Rugoff and Becker Management Corporation (hereinafter collectively referred to as Rugoff & Becker) and Hara Construction Company (hereinafter Hara). Under the terms of the agreement, Rugoff & Becker was named managing agent of the property and was responsible for conducting the theatre business. The agreement also named Hara as building agent and delegated to it the responsibility of advising and consulting with Turtle Bay on all matters affecting the property. As building agent, Hara was entitled to a fee of 1% of the theatre's gross receipts.

On December 30, 1968, Hara designated Ralph Abrams as building agent. Although Ralph Abrams was paid the fee on Turtle Bay's theatre, the money was deposited in petitioner's account and has been deemed partnership income. No services were ever performed by Hara, Ralph Abrams, Charles Abrams or anyone else as building agent on the Turtle Bay property. The estate of Ralph Abrams has continued to receive the payment of the fee since his death in 1971. In fact, the State Tax Commission accepted petitioner's contention that the clause naming Hara as building agent was "merely a device to enable sums to be paid to Ralph Abrams and Charles Abrams in excess of * * * their proportionate share of the capital investment" in the theatre.

Turning to the second piece of realty involved in this proceeding, we discern the following facts. On May 11, 1959, petitioner entered into a joint venture with Rugoff Theatres, Inc., for the purpose of acquiring the Murray Hill Theatre located at 160-164 East 34th Street in New York City. The joint venture, Murray Hill Theatre Corporation (hereinafter Murray Hill), leased the property to the 34th Street Theatre Corporation which was wholly owned by Donald Rugoff. Under the terms of the joint venture, Rugoff Theatres was to receive 5% of the gross receipts for managing and operating the Murray Hill Theatre.

As a result of a dispute in 1969 between petitioner and Donald Rugoff, a settlement agreement was reached which named Ralph Abrams and Charles Abrams as building agents for the Murray Hill Theatre. Here, as in the Turtle Bay agreement, petitioner was to receive 1% of the gross receipts. The Tax Commission found that the settlement agreement did

not require the performance of any services by petitioner or by Ralph and Charles Abrams individually. Indeed, the sole evidence, as in Turtle Bay, was that the agreement was made to allow petitioner to receive a preferential return over the other investors.

The Audit Division of the State Department of Taxation and Finance issued deficiency notices on petitioner and on the estates of Ralph and Charles Abrams. The deficiency notices contended that petitioner failed to pay unincorporated business taxes for the years 1969 through 1976. Upon administrative appeal, petitioner alleged that its dividend and interest income was the result of passive ownership and, therefore, not subject to unincorporated business income tax. Petitioner also contended that its rental income was exempt from such tax under Tax Law § 703 (e). Lastly, petitioner argued that Tax Law § 683 barred the Department from assessing petitioner with deficiencies for the years 1969 through 1974. The Tax Commission granted petitioner's request that the deficiencies for 1969 through 1974 be dismissed as untimely. The Tax Commission also found that any rental income which petitioner earned on property that it wholly owned was exempt under Tax Law § 703 (e). The Tax Commission, however, upheld the deficiency insofar as it found that petitioner owed unincorporated business income taxes on its rental income on property that it did not wholly own, on any fees regarding the Turtle Bay and Murray Hill properties and on any interest and dividend income. Petitioner commenced this CPLR article 78 proceeding, which has been transferred to this court for disposition.

Tax Law article 23 imposed a tax on the unincorporated business income of all unincorporated businesses.[2] Tax Law § 703 (a) defined an unincorporated business as "any trade, business or occupation conducted, engaged in * * * by an individual or unincorporated entity, including a partnership". There is no question that petitioner was an unincorporated business. Indeed, in the petition it stated that it was in the business of "owning, renting, operating and managing real property". The issue then is whether the various forms of income at issue herein were unincorporated business income.

■ Turning first to the issue of whether petitioner's interest and dividend income was subject to the imposition of the

---

2. The law was repealed effective December 31, 1982. Such repeal did not affect taxes accruing prior to that date (L 1978, ch 69, §§ 7, 30).

unincorporated business tax, we note that in its decision the Tax Commission stated that "there is no evidence in the record from which it can be determined what proportion of the *interest and dividends* earned by the partnership was used to advance its exempt activities; consequently, the entire amount of *interest and dividends* must be attributed to the non-exempt activities and held subject to tax" (emphasis supplied). Clearly, this statement indicates that the Tax Commission taxed petitioner on its *use* of the interest and dividends. Tax Law § 703 is an income tax statute and as such authorizes taxation solely based on the *source* of the income.

Next, the Tax Commission argued that it was incumbent on petitioner to prove that its interest and dividend income came from its exempt activities. Normally, interest or dividend income is from a passive investment and, absent any credible evidence that such income was an integral part of a petitioner's unincorporated business, such income is outside the scope of Tax Law § 703 *(see, Matter of 635 Assoc. v New York State Tax Commn.,* 95 AD2d 913, 914; *Matter of Merrick v Tully,* 68 AD2d 289, 296). Here the only corporation petitioner invested in was Turtle Bay. Even if the rental income and the fees received on the property owned by Turtle Bay is taxable, there is no showing that the dividend income was an integral part of such business *(see, Matter of 635 Assoc. v New York State Tax Commn., supra,* p 914; *Matter of Merrick v Tully, supra,* p 296). Finally, the Tax Commission appears to concede error in the imposition of an unincorporated business tax on petitioner's interest and dividend income since it admitted that despite the agreement making petitioner the building agent, petitioner played a passive role and performed no services.

We also hold that the Tax Commission erred as a matter of law in applying the unincorporated business tax to petitioner's income from properties that it partially owned. While we do not quarrel with the Tax Commission's contention that petitioner was a stockholder in both the Turtle Bay and Murray Hill properties and did not "own" either, and, therefore, was not entitled to a tax exemption under Tax Law § 703 (e) *(see, Matter of 635 Assoc. v New York State Tax Commn., supra; Matter of Elkind v State Tax Commn.,* 63 AD2d 789; *see also, Matter of Swid-Pearlman Mgt. v Tully,* 67 AD2d 1022), we do find that where, as here, a partnership receives income in the nature of a return on a passive investment, such

income is not subject to the unincorporated business tax. Here, although petitioner referred to its income from the Turtle Bay and Murray Hill transactions as "rental income", its petition to the Tax Commission described the source of that income as Turtle Bay and Murray Hill. Since the Tax Commission found that petitioner never performed any services for either corporation and the record clearly reveals that Rugoff & Becker performed all of the management activities on the properties, the income mistakenly identified as "rental" was merely a return on a passive investment and not subject to unincorporated business tax *(see, Matter of 635 Assoc. v New York State Tax Commn., supra,* p 914; *Matter of Merrick v Tully, supra,* p 296).

■ Finally, we hold that the Tax Commission did not err in applying the unincorporated business income tax to income petitioner earned in the form of management fees. While it is clear that management fees would be taxable since petitioner was not the owner of either the Turtle Bay or Murray Hill properties, a different result could be reached since the Tax Commission explicitly found that petitioner "never performed any services for Turtle Bay". Further, with respect to the settlement agreement between Ralph and Charles Abrams and Rugoff, the Tax Commission held that the settlement agreement "did not require the performance of any services by [petitioner]" but was just "entered into for the purpose of settling the then-pending arbitration proceeding", thereby making the management fees in each instance nothing more than return on passive investments. However, despite the substance of the transactions, petitioner chose to have the management fees made in a form that would be subjected to the unincorporated business tax. Petitioner, therefore, is bound by the form of the transaction, not the substance, in applying the exemption and we cannot say that the Tax Commission acted irrationally in holding petitioner to the form it chose *(see, Matter of Greco Bros. Amusement Co. v Chu,* 113 AD2d 622, 625).

CASEY, WEISS, MIKOLL and LEVINE, JJ., concur.

Determination modified, without costs, by annulling so much thereof as sustains the notices of deficiency as to interest and dividend income and rental income on partially owned property, and, as so modified, confirmed.